**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 28, 2014**

# In the Court of Appeals of Georgia

A13A1940. JONES v. THE STATE.

PHIPPS, Chief Judge.

In January 2013, a jury found Michael Jones guilty of driving under the influence of alcohol with an unlawful blood alcohol concentration ("DUI per se"),[1] driving under the influence of alcohol to the extent it was less safe for him to drive ("DUI less safe"),[2] and speeding. For sentencing purposes, the trial court merged the DUI less safe count into the DUI per se count, and sentenced Jones for DUI per se and speeding. After his convictions were entered, Jones moved for a new trial, which the trial court denied.

---

[1] OCGA § 40-6-391 (a) (5).

[2] OCGA § 40-6-391 (a) (1).

On appeal, Jones contends that the trial court erred by admitting evidence of a prior (2005) conviction for driving under the influence of alcohol, pursuant to OCGA § 24-4-404 (b), because the prior conviction evidence was not relevant to, or probative of, any issue at trial aside from his character. Jones further contends that even if the prior conviction evidence had some relevance and was admissible under OCGA § 24-4-404 (b), it should have been excluded under OCGA § 24-4-403, because its unfair prejudicial effect substantially outweighed its probative value. Because evidence of the prior conviction was improperly admitted, we reverse the conviction for DUI per se, and vacate the guilty verdict on the DUI less safe count; because the evidence meets the standard of *Jackson v. Virginia*,[3] the case may be retried on the DUI counts. Because evidence of the prior conviction would have had no impact on the speeding offense, we affirm the conviction for speeding.

The evidence at trial showed the following. At about 11:45 p. m., on January 21, 2011, Jones was stopped by a police officer for driving in excess of the posted speed limit. The officer noticed that Jones's eyes were red and watery, and that an odor of an alcoholic beverage was coming from inside the vehicle. Jones, the sole occupant of the vehicle, denied that he had been drinking. At the officer's request,

---

[3] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

Jones exited his vehicle; at that point, the officer identified the source of the odor of alcohol as Jones's breath. Still, Jones denied that he had been drinking. Jones showed clues of impairment on each of three field sobriety evaluations the officer administered, and Jones ultimately admitted that earlier that day he had drunk two beers at a bar. The officer formed the opinion that Jones was a less safe driver, and arrested him. Jones was read implied consent warnings, and he consented to state-administered chemical testing of his breath. Jones registered blood alcohol levels of 0.147 and 0.139, in sequential breath samples administered on an Intoxilyzer 5000.

In February 2011, Jones was charged by accusation with DUI per se, DUI less safe, and speeding. In June 2011, the state moved to introduce at trial, as a similar transaction, evidence of a 2005 conviction for DUI less safe, for the purposes of showing Jones's "bent of mind, course of conduct[,] identity, knowledge, lack of mistake, motive, and intent[,] . . . [and] willingness . . . to operate a motor vehicle after his . . . ability to do so safely has been compromised by the ingestion of intoxicants."

In December 2012, the state filed an amendment to its similar transaction motion, stating the purposes for which it sought to introduce the prior conviction evidence as "including, but not limited to, proof of motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident." A hearing on the state's motion was conducted at trial prior to opening statements. The trial court orally ruled that the state could introduce evidence of the prior conviction as it concerned the DUI less safe charge for the purpose of showing "[k]nowledge and intent," that is, "the intent to drive knowing that he was less safe . . . because he was before." The trial court found that Jones's prior DUI conviction was

> probative of the fact that he's aware of what [drinking alcohol] did to him the first time and this is what it did to him the second time. We're talking about less safe. We're not talking about limits. . . . [F]orget about the levels. We're talking about what the substance did to him, within his knowledge. . . . [H]e knows, better than anybody does, what alcohol does to him this time.

Therefore, at trial, the state adduced evidence that in March 2005, Jones drove a vehicle when he was under the influence of alcohol to the extent that it was less safe for him to do so, and with an unlawful blood alcohol concentration. On that prior occasion, Jones was stopped by a police officer for, inter alia, failing to maintain his lane of traffic and following too closely. The officer testified that he had smelled a strong odor of an alcoholic beverage coming from Jones and observed that Jones's eyes were bloodshot and glassy and that his speech was slurred. The officer testified

4

that Jones admitted to him that he had drunk "a few" beers, later stating that he had drunk about four "adult beverages." Jones showed clues of impairment on field sobriety tests. The officer formed the opinion that Jones was less safe to drive and arrested him for driving under the influence. Jones was read implied consent warnings, and consented to chemical testing of his breath. Jones registered blood alcohol levels of 0.195 and 0.199 in two sequential breath samples administered on an Intoxilyzer 5000.

1. Jones contends that the trial court erred by admitting evidence of his prior DUI conviction to prove that he had the requisite intent and knowledge to violate OCGA § 40-6-391 (a) (1) and OCGA § 40-6-391 (a) (5), because the prior conviction evidence was not relevant to, or probative of, any issue at trial aside from his character.

Georgia's new Evidence Code became effective and pertinently applies to trials conducted after January 1, 2013.[4] The new Code adopted, in large measure, the Federal Rules of Evidence,[5] and its sections are comparable to corresponding federal

---

[4] *Matthews v. State*, 294 Ga. 50, 53 (3) (a), n. 2 (751 SE2d 78) (2013); OCGA § 24-4-404 (b); Ga. L. 2011, p. 99, 214 § 101.

[5] Ga. L. 2011, p. 99, § 1.

rules.[6] "Because of this similarity[,] it is proper that we give consideration and great weight to constructions placed on the Federal Rules by the federal courts."[7]

OCGA § 24-4-404 (b) pertinently provides:

Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.[8]

The 11th Circuit utilizes a three-part test for evidence of other crimes or acts to be admissible pursuant to Federal Rule of Evidence 404 (b): (1) it must be relevant to an issue other than defendant's character; (2) there must be sufficient proof to enable a jury to find by a preponderance of the evidence that the defendant committed the act(s) in question; and (3) the probative value of the evidence cannot be substantially

---

[6] See Title 24 of the Official Code of Georgia Annotated; Federal Rules of Evidence.

[7] *Barnum v. Coastal Health Svcs.*, 288 Ga. App. 209, 215 (2) (b) (653 SE2d 816) (2007) (citation omitted).

[8] See *Johnson v. State*, 294 Ga. 86, 91 (5) n. 3 (750 SE2d 347) (2013).

outweighed by undue prejudice, and the evidence must satisfy Federal Rule of Evidence 403.[9]

Before the new Code became effective, appropriate purposes for admitting similar transaction evidence under Georgia law included course of conduct and bent of mind.[10] Even then, it was held that "[t]he ultimate issue in determining the admissibility of evidence of other crimes [was] not mere similarity but relevance to the issues in the trial of the case."[11]

This appears to be the first appellate case under the new Evidence Code to address the admissibility of evidence of a prior DUI conviction in a DUI trial for the purposes of showing intent and knowledge of the accused. Before the new Evidence Code became effective, this court held that "bent of mind and course of conduct were

---

[9] See *United States v. Edouard*, 485 F3d 1324, 1344 (II) (C) (11th Cir. 2007); *United States v. Delgado*, 56 F3d 1357, 1365 (III) (B) (11th Cir. 1995). Pursuant to OCGA § 24-4-403 (which mirrors Federal Rule of Evidence 403), "Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[10] See *Reeves v. State*, _ Ga. _ (2), n. 3 (_ SE2d _) (Case No. S13A1524, decided March 3, 2014); see generally *Williams v. State*, 261 Ga. 640, 642 (2) (b), n. 2 (409 SE2d 649) (1991).

[11] *McGee v. State*, 267 Ga. 560, 564 (2) (480 SE2d 577) (1997) (citation and punctuation omitted).

proper purposes for the admission of similar transaction evidence in cases involving allegations of less safe DUI,"[12] and that "evidence of a prior DUI offense, regardless of the circumstances surrounding its commission, is logically connected with a pending DUI charge as it is relevant to establish that the defendant has the bent of mind to get behind the wheel of a vehicle when it is less safe for him to do so."[13] But the new Evidence Code does not explicitly list either bent of mind or course of conduct as permitted purposes to admit similar transactions evidence.[14]

A trial court's decision to admit similar transaction evidence is reviewed for a "clear abuse of discretion."[15]

---

[12] *Steele v. State*, 306 Ga. App. 870, 872 (1) (703 SE2d 5) (2010) (footnote omitted).

[13] *Massey v. State*, 309 Ga. App. 501, 503 (711 SE2d 65) (2011) (citation and punctuation omitted); see *Tam v. State*, 232 Ga. App. 15-16 (1) (501 SE2d 51) (1998).

[14] See OCGA § 24-4-404 (b); *Matthews*, supra.

[15] See *United States v. McNair*, 605 F3d 1152, 1203 (VIII), n. 69 (11th Cir. 2010); *United States v. Zapata*, 139 F3d 1355, 1357 (11th Cir. 1998); *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012) ("The decision to admit similar transaction evidence which satisfies the three-prong [*Williams*] test is within the trial court's discretion and will not be disturbed absent an abuse of that discretion.") (citations omitted).

8

(a) *Intent*. A violation of OCGA § 40-6-391 (a) (1) (DUI less safe) is a crime, and thus must contain the elements, as set forth in OCGA § 16-2-1 (a), required to constitute a crime in Georgia.[16] Pursuant to OCGA § 16-2-1 (a), "[a] 'crime' is a violation of a statute of this state in which there is a joint operation of an act or omission to act and intention or criminal negligence." But,

> [c]riminal intent does not always equate to mental fault, guilty knowledge, or purposeful violation of the law. . . . [U]nless the particular provision indicates otherwise, the traffic offenses defined in Chapter 6's Rules of the Road are 'strict liability' offenses, meaning that they can be committed without a culpable mental state. They do not require the specific intent or wrongful purpose that is an element of other crimes, but they do require the defendant to have voluntarily committed the act that the statute prohibits, which typically involves driving at a particular time and place . . . or in a particular way.[17]

The general criminal intent required for strict liability offenses is "simply the intent to do the act which results in the violation of the law, and not the intent to commit the crime itself."[18]

---

[16] See *State v. Ogilvie*, 292 Ga. 6, 8 (2) (a) (734 SE2d 50) (2012).

[17] Id. at 8-9 (2) (a) (citations and punctuation omitted).

[18] Id. at 8 (2) (a) (citations and punctuation omitted).

9

"DUI is a crime of *general*, not specific, intent."[19] In *Prine v. State*,[20] this court stated:

In a crime of general intent, the 'intent' required is proved through proof of the commission of the act itself. In a DUI [less safe] case . . . the act consists of (1) driving, (2) after consuming alcohol to the extent that one is (3) a less safe driver. There is no proof of intent beyond proof of the act. To prove DUI, the State need not prove intent to commit the crime.[21]

"Evidence is relevant which *logically* tends to prove or disprove any material fact which is at issue in the case, and every act or circumstance serving to *elucidate or throw light* upon a material issue or issues is relevant."[22] "The relevance of other

---

[19] *Prine v. State*, 237 Ga. App. 679, 680 (2) (a) (515 SE2d 425) (1999) (citation omitted).

[20] Id.

[21] Id. at 679, 680 (2) (a) (citation and punctuation omitted); see *Myers v. State*, 302 Ga. App. 753, 755-756 (2) (691 SE2d 650) (2010) ("driving under the influence . . . [is a] crime[] malum prohibitum, the criminal intent element of which is simply the intent to do the act which results in the violation of the law, not the intent to commit the crime itself.").

[22] *Hoffer v. State*, 192 Ga. App. 378, 382-383 (3) (b) (384 SE2d 902) (1989) (citation and punctuation omitted).

crimes evidence to intent is determined by comparing the defendant's state of mind in committing both the extrinsic and charged offenses."[23]

> Where the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense.[24]

In this case, the evidence adduced at trial, absent the similar transaction evidence, was sufficient to enable a rational trier of fact to find that Jones intended to drive after he had consumed alcohol to the extent that he was a less safe driver on January 21, 2011.[25] The additional evidence that he had done so on a prior occasion did not logically tend to prove that Jones did so in this instance, because no culpable

---

[23] *United States v. Zapata*, supra, 139 F3d at 1358 (citation omitted).

[24] *United States v. Beechum*, 582 F2d 898, 911 (III) (C) (5th Cir. 1978) (footnote omitted). See *United States v. Delgado*, supra (stating that the Eleventh Circuit court "look[s] to *Beechum*, the seminal case in any Eleventh Circuit 404 (b) analysis, and its progeny to discern whether the district judge abused his discretion in admitting . . . other crimes evidence.").

[25] See *Prine*, supra ("the 'intent' required is proved through proof of the commission of the act itself"); see generally *Collins v. State*, 177 Ga. App. 758, 759 (2) (341 SE2d 288) (1986).

mental state was required to commit the crime in the first place.[26] Accordingly, the

trial court erred in permitting the similar transaction evidence to be admitted to prove

intent.[27]

Citing *United States v. Delgado*,[28] the state asserts: "When a defendant enters

a plea of 'not guilty,' he makes intent a material issue, imposing on the prosecution

a substantial burden to prove his intent. The prosecution may meet this burden with

qualifying Rule 404 (b) evidence." But what the Eleventh Circuit court actually said

in *Delgado* was: "A defendant who enters a not guilty plea makes intent a material

issue, imposing a substantial burden on the government to prove intent; the

government may meet this burden with qualifying 404(b) evidence *absent affirmative

steps by the defendant to remove intent as an issue*."[29] In *Delgado* and the case upon

which it relies for this proposition, the indicted activity involved specific intent

---

[26] See generally *Ogilvie*, supra at 8-9 (2) (a); *Myers*, supra; *Hoffer*, supra at 380 (1).

[27] See generally *McMullen v. State*, 316 Ga. App. 684, 690-693 (2) (730 SE2d 151) (2012); *King v. State*, 230 Ga. App. 301-304 (1) (496 SE2d 312) (1998).

[28] Supra.

[29] Supra (citation omitted; emphasis supplied).

crimes,[30] not, as discussed above, the general type of intent required to commit the strict liability traffic offense in this case.

(b) *Knowledge*. Admission of the similar transaction evidence as proof that Jones knew that drinking alcoholic beverages made him a less safe driver did not elucidate or throw light upon whether, in this instance, he committed the same crime again; no culpable mental state was required.[31]

The state asserts that there is precedent for admitting the prior DUI conviction to show Jones's knowledge "on the date of the instant offense." But the various

---

[30] *United States v. Delgado*, supra, 56 F3d at 1361 ("indicted activity involved a conspiracy and a substantive count for both importation and possession with intent to distribute" cocaine); *United States v. Cardenas*, 895 F2d 1338, 1340 (I) (11th Cir. 1990) (defendant indicted for conspiracy to possess with intent to distribute cocaine and possession with intent to distribute cocaine). See *United States v. Matthews*, 431 F3d 1296, 1311 (V) (11th Cir. 2005) (recognizing framework for the admissibility of 404 (b) evidence used in the context of conspiracy charge in *United States v. Roberts*, 619 F2d 379 (5th Cir. 1980)); *United States v. Roberts*, supra, 619 F2d at 382 (II) ("The offense of conspiracy requires an element of intent or knowledge which is often difficult to prove.") (citation and punctuation omitted).

[31] *Ogilvie*, supra; *Hoffer*, supra at 379-380 (1) (to convict defendant of traffic offense of running a red light, "[t]he state was not required to prove that [the defendant] intentionally drove through a red light, or even that [the defendant] knew that the light was red."); *Queen v. State*, 189 Ga. App. 161, 163 (1) (c) (375 SE2d 287) (1988) (explaining that "certain 'strict criminal liability' motor vehicle *safety* statutes . . . can be violated . . . without a showing of *mens rea* or guilty knowledge on the part of the violator.").

13

federal circuit court cases[32] upon which the state relies involved the admission of prior DUI convictions in prosecutions for manslaughter or second degree murder where the state was required to prove malice or callous indifference as an element of a charged offense; because the accused's knowledge tended to prove either of those culpable mental states, the prior crime that supplied that knowledge was admissible.[33]

---

[32] *United States v. New*, 491 F3d 369 (8th Cir. 2007); *United States v. Tan*, 254 F3d 1204 (10th Cir. 2001); *United States v. Chippewa*, Case No. 97-30160 (9th Cir. 1998); *United States v. Loera*, 923 F2d 725 (9th Cir. 1991); *United States v. Fleming*, 739 F2d 945 (4th Cir. 1984).

[33] *United States v. New*, supra, 491 F3d at 372 (I), 374-375 (II) (B) (in prosecution for involuntary manslaughter resulting from alcohol-related vehicular homicides, district court properly admitted prior drunk driving convictions to prove an element of the charged offense which was "satisfied by proof that the defendant knew or could reasonably foresee, that his conduct was a threat to the lives of others."); *United States v. Tan*, supra, 254 F3d at 1206 (I), 1209 (II) (1), 1211 (II) (1) (in prosecution for second degree murder resulting from an alcohol related vehicular homicide, district court erred by excluding prior drunk driving convictions to prove malice component of the murder charge); *United States v. Chippewa*, supra (in prosecution for second degree murder resulting from an alcohol related vehicular homicide, district court proper admitted evidence of prior drunk driving to prove malice component of murder charge); *United States v. Loera*, supra, 923 F2d at 726-727 (I), 729 (III) (in prosecution for second degree murder resulting from an alcohol related vehicular homicide, district court properly admitted prior drunk driving convictions to establish the element of malice required to prove murder charge); *United States v. Fleming*, supra, 739 F2d at 947 (I), 949 (III) (in prosecution for second degree murder resulting from an alcohol related vehicular homicide, district court properly admitted prior drunk driving record because it was relevant to prove malice component of murder charge).

14

In this case, the purposes for which the trial court admitted evidence of the prior conviction were not relevant to, or probative of, the commission of the crime charged. The state has not set forth any appropriate purpose for which evidence of the prior DUI conviction was admitted, and we find none.[34] Evidence of a prior crime is "highly and inherently prejudicial, raising, as it does, an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion and thereby putting the accused's character in issue."[35] Therefore, we reverse Jones's conviction for DUI per se, and vacate the guilty verdict on the DUI less safe count; because the similar transaction evidence would have had no impact on the speeding offense, we affirm Jones's conviction for

---

[34] See *United States v. McNair*, supra ("This Court will not hold that the district court abused its discretion where it reached the correct result even if it did so for the wrong reason.") (citation and punctuation omitted).

[35] *Williams*, supra at 641 (2) (a).

speeding.[36] "Because the evidence meets the standard of *Jackson v. Virginia*,[37] the case may be retried" on the DUI counts.[38]

2. Because of our holding in Division 1,[39] we need not address Jones's alternative argument that evidence of the prior DUI conviction should have been excluded because its unfair prejudicial effect substantially outweighed its probative value.

*Judgment affirmed in part, reversed in part, and vacated in part. Ellington, P. J., and Branch, J., concur.*

---

[36] See generally *McMullen*, supra; *Muir v. State*, 248 Ga. App. 49, 52 (1) (b) (545 SE2d 176) (2001); *King*, supra.

[37] Supra.

[38] *Lively v. State*, 262 Ga. 510, 512 (3) (421 SE2d 528) (1992); see *Green v. State*, 323 Ga. App. 832, 833 (1) (a), 836 (2) (748 SE2d 479) (2013); *Collins*, supra.

[39] Supra.